This is an appeal from a judgment rendered on a jury verdict awarding Elton and Susie Dyess $500,000 in their negligence action against Electric Service Company of Montgomery, Inc. ("Electric"). The questions presented are whether the trial court erred in denying Electric's motions for directed verdict and j.n.o.v. on the ground that Dyess was contributorily negligent as a matter of law, and whether the trial judge's refusal to consider a juror's affidavit that tended to impeach the jury's verdict was proper.
Elton Dyess was in the business of erecting billboards. In January 1987 he contracted with Electric for Electric to erect six utility poles that would serve as support for a proposed billboard. Dyess supplied Electric with a diagram that showed the desired location of the poles, specified that the first pole was to be set 10 feet from the right-of-way line, that is, a safe distance from nearby electrical power lines, and specified the distance that each pole was to be from the others. Those distances were to be measured using the right-of-way line as a reference point. After Electric completed its work, Dyess and an assistant, using a portable lift known as a "cherry picker," began bolting lengths of angle iron to the poles. Dyess did not measure the distance of the first pole from the right-of-way line before beginning work, but he did measure the distance between each pole, and found that they had been spaced as he had specified in the diagram. He testified that he had hired Electric to do similar work in the past and had not had problems, and that the first pole appeared to be set in compliance with the diagram.
Soon after beginning work, Dyess placed a length of angle iron across the bucket of the cherry picker and began to raise it and himself. Dyess testified that he was generally aware of the hazard posed by the power lines, but that he assumed that all of the poles were set in compliance with his diagram and were therefore a safe distance from the power lines. However, after the cherry picker had risen approximately 16 feet, the length of angle iron came into contact with a power line, and Dyess was badly burned. Dyess was not facing the power lines and did not see them before the angle iron touched them. An investigation following the accident revealed that Electric had placed the first pole approximately 3 feet from the right-of-way line, instead of the specified 10 feet. That error resulted in Dyess's working closer to the nearby power lines than he would have had the poles been set in compliance with the diagram.
Dyess filed an action against Electric, alleging negligence. His wife, Susie Dyess, filed a claim for loss of consortium. Electric filed a motion for a directed verdict, alleging contributory negligence. That motion was denied. After being instructed on negligence and contributory negligence, the jury returned a verdict in favor of Dyess, assessing damages of $400,000, and in favor of Susie Dyess, assessing damages of $100,000. Judgment was entered in accordance with those verdicts. Electric then filed a motion for j.n. o.v., alleging that it was entitled to a directed verdict due to Dyess's alleged contributory negligence, or in the alternative, a motion for new trial, alleging that the jury had disregarded the trial court's instruction on contributory negligence. Those motions were denied.
Electric argues that the trial judge erred by not granting its motion for a directed verdict or its motion for j.n.o.v., because, it says, Dyess was contributorily *Page 246 
negligent. Ordinarily, contributory negligence is a question for the jury. Elba Wood Products, Inc. v. Brackin,356 So.2d 119 (Ala. 1978). If the jury returns a verdict that implicitly rejects that affirmative defense, its finding on that issue will not be disturbed unless it is shown that the plaintiff was contributorily negligent as a matter of law. This Court specified what must be shown to support such a finding inCentral Alabama Electric Coop. v. Tapley, 546 So.2d 371 (Ala. 1989):
 "In order to sustain a finding of contributory negligence as a matter of law, there must be a finding that the plaintiff put himself in danger's way, Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276 (1928), and a finding that the plaintiff appreciated the danger confronted, Wilson v. Alabama Power Co., 495 So.2d 48 (Ala. 1986); Marquis v. Marquis, 480 So.2d 1213 (Ala. 1985); Baptist Medical Center v. Byars, 289 Ala. 713, 271 So.2d 847 (1972); Mackintosh v. Wells, supra. Moreover, it must be demonstrated that the plaintiff's appreciation of the danger was a conscious appreciation at the moment the incident occurred. Marquis v. Marquis, supra; Elba Wood Products, Inc. v. Brackin, [356 So.2d 119 (Ala. 1978)]. Mere 'heedlessness' is insufficient to warrant a finding of contributory negligence as a matter of law. Decatur Light, Power Fuel Co. v. Newsom, 179 Ala. 127, 59 So. 615 (1912)."
Tapley, 546 So.2d at 381. (Emphasis added.)
This case is unlike Campbell v. Alabama Power Co., [July 13, 1990] (Ala. 1990); Watters v. Bucyrus-Erie Co., 537 So.2d 24
(Ala. 1989); and Wilson v. Alabama Power Co., 495 So.2d 48
(Ala. 1986). Campbell, while working on top of a house being moved along a city street, came into contact with electric power lines that he was attempting to raise over the house. Watters, a foreman on a crew working alongside a highway, had pointed out the danger of the power lines 30 minutes before and had looked at the lines only seconds before he pulled the crane into contact with the lines. Wilson, though he had been specifically warned of the danger posed by the line, climbed into the part of the tree where the line was in order to reach a bird's nest. Thus, in each of those cases, the plaintiff was specifically aware of the presence of the lines immediately before touching them, was aware of the danger posed thereby, and nevertheless conducted himself negligently so as to come into contact with the lines.
The evidence in this case supports the trial court's holding that Dyess did not have, as a matter of law, a conscious appreciation of the danger at the moment the incident occurred. Dyess, although generally aware of the danger posed by power lines, testified that he was not aware that the lines in question were closer than he expected them to be and was not specifically aware of their presence or their proximity just before he came into contact with them. His failure to measure the distance from the first utility pole to the right-of-way line, although revealed by hindsight to be an error in judgment, was not so unreasonable at the time in light of the prior course of dealing between Dyess and Electric and his finding that the individual poles were a proper distance apart. Although that failure can fairly be characterized as heedlessness, it does not rise to the level of contributory negligence as a matter of law.
Because there was evidence that Dyess was not aware of the proximity of the first pole to the power lines, the trial court did not err in declining to hold that at the time he was injured he necessarily had a conscious appreciation of the danger posed by Electric's failure to properly position the utility poles. Dyess presented evidence that, because he did not suspect the improper proximity of the power line, he was not looking at it as he raised the cherry picker and, thus, that he did not consciously appreciate the danger. Under the applicable law, the jury was entitled to find that he was not contributorily negligent. Therefore, the trial court did not err in declining to hold that Dyess was contributorily negligent as a matter of law, Tapley, supra. Deciding cases of this kind is not without difficulty, and their resolution "turns on the facts and circumstances unique to each case."Tapley, 546 So.2d at 381. *Page 247 
Electric also contends that the trial judge erred by denying its motion for a new trial that was based on its allegation that the jury disregarded the trial court's instruction on contributory negligence. The only evidence in support of that allegation was an affidavit by a juror that said, in essence, that the jury employed comparative negligence concepts. The trial judge overruled that motion based on this Court's opinion in Alabama Power Co. v. Brooks, 479 So.2d 1169 (Ala. 1985). In that opinion this Court restated the settled rule that testimony or affidavits of jurors are generally not admissible to impeach their verdicts. Brooks, 479 So.2d at 1178. The purpose of this rule is to protect the jury from improper influences and to allow its deliberations to be conducted without interference. Clay v. City of Montgomery, 102 Ala. 297,14 So. 646 (1893).
After reviewing the record, this Court finds no error that warrants reversal. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
HORNSBY, C.J., and JONES and SHORES, JJ., concur in the result.