REL: 09/26/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

————————————

### 1121480

————————————

**Frank Kruse, Esq., administrator of the estate of Timothy Lovely, M.D., and Southern Medical Group, Inc.**

**v.**

**Jeremy Freeman**

**Appeal from Walker Circuit Court**
**(CV-07-0134)**

STUART, Justice.

AFFIRMED. NO OPINION.

Bolin, Parker, Shaw, Main, Wise, and Bryan, JJ., concur.

Moore, C.J., and Murdock, J., dissent.

1121480

MOORE, Chief Justice (dissenting).

In my view the trial court's failure to give a contributory-negligence instruction constituted reversible error. Therefore, I respectfully dissent from the no-opinion affirmance of the judgment of the trial court.

<u>Facts and Procedural History</u>

Although suffering from a degree of cerebral palsy and mental retardation, Jeremy Freeman nonetheless had been able to work. After he fell at his house, Freeman was examined on March 24, 2005, by Dr. Timothy Lovely, who ordered a CT scan of Freeman's brain and then diagnosed him as suffering from a mild concussion. On April 4, Freeman returned to Dr. Lovely and complained about neck pain and numbness in his arms and hands. Dr. Lovely ordered an X-ray of the upper (cervical) spine, which revealed only a minor curvature. Thinking that the crutch Freeman was using following knee surgery might be causing the numbness, Dr. Lovely referred Freeman to Dr. Gary N. Russell, the orthopedic surgeon who had performed the knee surgery, whom he saw the next day.

Two months later Freeman's mother found him helpless in his bed. He was transported to a hospital, where an MRI

2

1121480

revealed a herniated disk. A spinal fusion relieved the pressure but left Freeman wheelchair-bound. In 2007 Freeman sued four doctors, including Dr. Lovely, and associated hospitals, claiming that their delay in diagnosing the herniated disk was a breach of the standard of care and had caused him permanent injury. At trial Dr. Lovely and Southern Medical Group, Inc., the only remaining defendants, argued that Freeman had contributed to the delay in treatment by not informing the three other doctors who had examined him after April 4 of the numbness in his arms and hands and the neck pain.

On March 22, 2013, the jury awarded Freeman $3.5 million in compensatory damages. The trial court denied Dr. Lovely's posttrial motions on August 1. Dr. Lovely committed suicide on September 11. His estate appeals.

## Discussion

Throughout the trial the court indicated numerous times that it planned to give an instruction on contributory negligence, namely that Freeman's failure properly to inform the doctors of his symptoms contributed to the delay in treatment of the herniated disk. The court twice formally

3

1121480

denied motions by Freeman seeking to exclude a contributory-negligence instruction.

> "In order to prove contributory negligence, the defendant must show that the party charged: (1) had knowledge of the condition; (2) had an appreciation of the danger under the surrounding circumstances; and (3) failed to exercise reasonable care, by placing himself in the way of danger."

Brown v. Piggly-Wiggly Stores, 454 So. 2d 1370, 1372 (Ala. 1984). "The question of contributory negligence is normally one for the jury. However, where the facts are such that all reasonable men must reach the same conclusion, contributory negligence may be found as a matter of law." 454 So. 2d at 1372.

Because two months elapsed between Freeman's visit to Dr. Lovely and the discovery of Freeman's spinal condition, I believe a justiciable issue existed as to whether Freeman was contributorily negligent. In that period Freeman saw a number of other doctors about his ailments, none of whom diagnosed the problem until Freeman presented himself at the hospital for examination in mid-June in a state of paralysis. Certainly the jury was entitled to find that Freeman did not appreciate the necessity of fully informing the other doctors of his symptoms and thus was not negligent. On the other hand, I

4

1121480

believe that Dr. Lovely was entitled to have the jury decide this fact-bound question based on its evaluation of what Freeman said to the three other doctors who saw him between his visit to Dr. Lovely and the manifestation of his paralysis. Because credible testimony supported Dr. Lovely's theory of the case, he was entitled to have the jury so instructed. "The defendant has the right to request instructions based upon any material hypothesis which the evidence in his favor tends to establish." Ex parte McGee, 383 So. 2d 205, 206 (Ala. 1980).

For the above reasons, I respectfully dissent.